UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SARAH L. BAKER,

       Plaintiff,

v.                   6:14-CV-1263
                      (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| RODRIGUEZ & ASSOCIATES, PLLC<br>  Counsel for Plaintiff<br>100 West Ave.<br>Saratoga Springs, NY 12866-2141 | STEPHEN T. RODRIGUEZ ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL<br>– REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | EMILY M. FISHMAN, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## **<u>REPORT and RECOMMENDATION</u>**

    This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 11.) This case has proceeded in accordance with General Order 18.

    Currently before the Court, in this Social Security action filed by Sarah L. Baker ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 8, 9.) For the reasons set forth below, it is recommended that Plaintiff's motion be granted, to the extent Plaintiff seeks remand under Sentence Four of 42 U.S.C. § 405(g), and Defendant's motion be denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on December 13, 1981. (T. 193.) Generally, Plaintiff's alleged disability consists of neck injury, arthritis, degenerative disc disease ("DDD"), spinal stenosis, nerve damage, and fibromyalgia. (T. 151.) Her alleged disability onset date is June 1, 2009. (T. 93.) She has past relevant work as a cashier/floor/service desk clerk, home health aide, and line worker. (T. 152.)

### B. Procedural History

On July 7, 2011, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 42.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On August 22, 2012, Plaintiff appeared before ALJ Robert Wright. (T. 24-48.) On October 11, 2012, ALJ Wright issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 10-23.) On August 18, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 15-19.) First, the ALJ found that Plaintiff had not engaged in

2

substantial gainful activity since June 30, 2011. (T. 15.) Second, the ALJ found that Plaintiff had the severe impairments of lumbosacral spondylosis, cervical disc herniation, and possible history of fibromyalgia. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (*Id.*) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work. (*Id.*)[1] Fifth, the ALJ determined that Plaintiff was capable of performing her past relevant work as a cashier. (T. 18.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to assign proper weight to the medical source statement of Plaintiff's treating physician, Richard O'Brien, D.O. (Dkt. No. 8 at 4-6 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ improperly assessed Plaintiff's credibility. (*Id.* at 6-8.) Third, and lastly, Plaintiff argues the ALJ's step four conclusion was unsupported by the record. (*Id.* at 8-9.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly evaluated the medical opinion evidence in the record. (Dkt. No. 9 at 5-14 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly assessed Plaintiff's

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967.

3

credibility. (*Id.* at 14-16.) Third, and lastly, Defendant argues the ALJ's step four determination was proper. (*Id.* at 16-19.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the

5

claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Properly Evaluated Medical Opinion Evidence in the Record

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 8 at 4-6 [Pl.'s Mem. of Law].) The Court adds the following analysis.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Id.* at § 416.927(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (*quoting Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

6

Dr. O'Brien treated Plaintiff for her neck pain and other ailments. On August 30, 2012, Dr. O'Brien completed a medical source statement. (T. 527-532.) Therein he observed Plaintiff could never lift or carry more than ten pounds. (T. 527.) Dr. O'Brien opined Plaintiff could sit, stand, or walk less than 45 minutes at one time for each posture. (T. 528.) Plaintiff could sit, stand, or walk less than 45 minutes total each posture in an eight hour work day. (*Id.*) Dr. O'Brien stated Plaintiff would need to lie down or change positions throughout the work day. (*Id.*) Dr. O'Brien noted that in assigning Plaintiff functional limitations, he relied on clinical findings; specifically, a cervical spine MRI dated June 12, 2012, which indicated severe spinal stenosis and degenerative disc disease, and a lumbar spine MRI dated May 31, 2012, which indicated very mild spondylosis at L4-L5/L5-S1. (*Id.*) Dr. O'Brien opined that Plaintiff had a reduced ability to use her hands. Plaintiff could occasionally reach in all directions with her right and left upper extremities. (T. 529.)[2] Plaintiff could occasionally push and/or pull. (*Id.*)

Dr. O'Brien provided additional postural and environmental limitations. He opined Plaintiff could never climb ladders, balance, crouch, or crawl. (T. 530.) He opined Plaintiff could occasionally stoop and kneel. (*Id.*) Dr. O'Brien observed Plaintiff could not tolerate unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, dust/odors/fumes/pulmonary irritants, extreme cold, extreme heat, or vibrations. (T. 531.)

The ALJ afforded Dr. O'Brien's medical opinion, "no weight." (T. 16.) In support of his conclusion, the ALJ stated Dr. O'Brien's limitations were not supported by medical

---

[2] The form Dr. O'Brien completed defined "occasionally" as very little to one-third of the time. (T. 527.)

7

evidence in the record, were contradicted by other medical opinions in the record, and inconsistent with Dr. O'Brien's own treatment notes. (*Id.*) Here, the ALJ substantively adheres to the Regulations because he clearly listed factors with which to evaluate Dr. O'Brien's opinion; however, he failed to properly apply those factors.

The ALJ stated that medical evidence failed to support Dr. O'Brien's limitations; however, the ALJ then proceeded to acknowledge that the objective medical evidence in the record actually supported Dr. O'Brien's clinical findings. (T. 16.) The ALJ recognized that MRIs confirmed the presence of disc protrusions with severe central canal stenosis and cervical radiculopathy, which supported Dr. O'Brien clinical findings of tenderness and muscle spasms in Plaintiff's neck. (*Id.*)[3] To be sure, none of the objective medical evidence in the record, as identified by the ALJ, undermines Dr. O'Brien's conclusions. *See Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (remanding for a proper evaluation of a treating physician's opinion where, among other factors, none of the objective medical evidence cited by the ALJ undermined the treating physician's opinion).

Next, the ALJ reasoned that although the objective medical evidence confirmed Dr. O'Brien's clinical findings, the findings were not supported by Plaintiff's positive response to treatment. (T. 16.) Specifically, the ALJ relied on statements from November and December 2010 in which Plaintiff indicated her neck pain was

---

[3] MRI dated October 22, 2010 indicated degenerative disc and facet disease at C5-6, C6-7 with extruded disc extending into the right neural foramen at C6-7 resulting in moderate to severe spinal stenosis and severe right neural foraminal stenosis. The 2010 MRI also indicated disc bulges and osteophyte complex C5-6 resulting in moderate to severe spinal stenosis. (T. 249.) MRI dated May 31, 2011 indicated small broad central disc herniation at C5-6, broad right paracentral disc herniation abutting and mildly flattening the right hemicord and extending to abut medial aspect right neural foramen. (T. 506.) MRI dated indicated new C5-6 central disc protrusion superimposed upon broad-based disc bulge which results in severe central canal stenosis, and mild right C6-7 neural foraminal stenosis. (T. 539.)

responding well to treatment. (*Id.*) The treatment notes the ALJ relied on did indicate Plaintiff's neck pain responded well to physical therapy; however, these treatment notes were completed by physical therapists and physical therapist assistants, not Dr. O'Brien.[4] Further, these treatment notes where rendered before the 2011 and 2012 MRIs were conducted. The ALJ correctly noted Dr. O'Brien's treatment note dated June 22, 2012, indicated Plaintiff's neck pain was "tolerable" (T. 540); however, the ALJ failed to discuss the majority of Dr. O'Brien's treatment notes in which he observed neck pain, neck spasms and tenderness, together with complaints of numbness in her upper extremities. (T. 435, 437, 444, 447, 449, 454, 455, 471). Dr. O'Brien further advised Plaintiff to minimize weight bearing. (T. 441, 464, 493.) "While the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' he cannot simply selectively choose evidence in the record that supports his conclusions." *Gecevic v. Secretary of Health and Human Servs.,* 882 F.Supp. 278, 286 (E.D.N.Y.1995) (*quoting Fiorella v. Heckler,* 725 F.2d 174, 176 (2d Cir.1983) (citations omitted)). Here, the ALJ did not provide any discussion of Dr. O'Brien's treatment notes which tended to support his conclusions.

The ALJ failed to properly assess Dr. O'Brien's opinion and remand is recommended for a thorough analysis and proper weight. First, as the ALJ concedes, the objective medical evidence supports Dr. O'Brien's medical opinions. Further, the medical evidence the ALJ relied on to discount Dr. O'Brien's medical opinions was narrow in scope and prior to all objective medical evidence in the record was completed.

---

[4] For example, physical therapy treatment notes dated November 11, 2010 list Dr. O'Brien as the attending physician; however, the treatment and notations were completed by Candace Underwood, P.T.A. (T. 256.)

9

The ALJ also improperly relied only on notations which tended to support his own conclusion, ignoring notations that did not. (*Id.*) Therefore, the ALJ did not properly assess Dr. O'Brien's opinion and erred in affording the opinion "no weight."

Further, if the ALJ believed Dr. O'Brien's opinions were not supported by objective medical evidence and his own treatment notes, the ALJ should have re-contacted Dr. O'Brien for clarification before affording the opinion "no weight." *See McDowell v. Colvin*, No. 11-CV-1132, 2013 WL 1337152, at *10 (N.D.N.Y. Mar. 11, 2013) *report and recommendation adopted,* No. 11-CV-1132, 2013 WL 1337131 (N.D.N.Y. Mar. 29, 2013) (finding that the ALJ had an obligation to re-contact the treating physician before giving "no weight" to his opinion). Therefore, this recommendation should not be read to preclude the ALJ from obtaining any additional information or clarification from Dr. O'Brien.

### B. Whether the ALJ Properly Assessed Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 8 at 6-8 [Pl.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d

Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.,* 20 C.F.R. § 416.929(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (*citing Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but her statements regarding the intensity, persistence and limiting effects of the symptoms were not credible. (T. 16.) In

11

support of his determination the ALJ stated that Plaintiff's impairments were severe "to the extent that they cause more than minimal limitations in [Plaintiff's] ability to perform basic work activities; however, the weight of the evidence supports a finding that [Plaintiff] retain[ed] the RFC to perform light exertional work." (*Id.*) Other than this determination, the decision is almost void of an analysis regarding Plaintiff's credibility in accordance with the factors outlined in 20 C.F.R. § 416.929. The ALJ provided a brief discussion of Plaintiff's activities of daily living, relying primarily on Plaintiff's alleged ability to care for three school aged children. (T. 18.) To be sure, the Court does not require a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *See Halloran v. Barnhart,* 362 F.3d 28, 31–32 (2d Cir.2004). However here, unlike in *Halloran*, the ALJ's reasoning and adherence to the regulations was not clear. Although the ALJ discussed Plaintiff's activities of daily living, it appears from the decision that this is all he relied on in making his credibility determination. Remand is recommended for a proper evaluation of Plaintiff's credibility in accordance with the factors outlined in 20 C.F.R. § 416.929. Further, remand is recommended for a proper credibility analysis in light of a proper evaluation of Dr. O'Brien's opinion and any subsequent medical evidence he may provide.

        **C.    Whether the ALJ's Step Four Determination was Proper**

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 20 at 8-9 [Pl.'s Mem. of Law].) The Court adds the following analysis.

At step four of the five step sequential evaluation process for determining whether an individual is disabled, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. § 416.920(f).

The term past relevant work is defined as "work that [a plaintiff] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [a plaintiff] to learn to do it." *Id.* at § 416.960(b)(1). A plaintiff will be found not disabled if it is determined that she has the RFC to perform: "1. The actual functional demands and job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61 (S.S.A. 1982). Here, the ALJ determined Plaintiff could perform her past relevant work as a cashier. (T. 18.)

First, given that remand is recommended for a proper evaluation of Dr. O'Brien's opinion and Plaintiff's credibility, this matter should also be remanded for a proper evaluation at step four and five of the sequential process.

Second, it is not clear from the record if Plaintiff performed past relevant work as a cashier. During the hearing, Plaintiff testified that she previously worked in a factory and prior to that she worked at Walmart as a cashier, at the service desk, in the layaway department, and in the toy department, where she lifted between five to fifty pounds depending on the department she was in. (T. 28-29.) Prior to Walmart, Plaintiff testified she was a cashier part-time. (T. 29.) A vocational expert ("VE") was also present at the hearing. Based on Plaintiff's testimony, the VE stated Plaintiff's past relevant work at Walmart would be classified as a customer service clerk (DOT 299.367-010). (T. 45.) The VE stated that the job of customer service clerk, as Plaintiff actually performed it, was performed up to a "very heavy" exertional level. (*Id.*)[5] The VE also testified that Plaintiff's past relevant work consisted of a home health aide (DOT 354.377-014) and

---

[5] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, we determine that he or she can also do heavy, medium, light and sedentary work." 20 C.F.R. § 416.967.

13

machine operator (DOT 559.382-042).  (*Id.*)  Plaintiff stated in her "Job History" that she performed work as a "cashier/floor/service desk," a home health aide, and a line worker. (T. 152.)  The record is not clear if Plaintiff actually performed work as a cashier to the level required to qualify as past relevant work under 20 C.F.R. § 416.960(b)(1) and SSR 82-61.   Therefore, it is recommended that this matter be remanded for a proper evaluation at step four regarding Plaintiff's past relevant work, specifically, if Plaintiff's past relevant work included that of cashier.

The Second Circuit has held that in some cases it is appropriate to remand for payment of benefits where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision," *Butts v. Barnhart,* 388 F.3d 377, 385 (2d Cir. 2004), *amended on other grounds*, 416 F.3d 101 (2d Cir. 2005), and evidence of disability is "overwhelming," *Shaw v. Chater,* 221 F.3d 126, 135 (2d Cir. 2000).  Where, however, "the administrative record contains gaps," and "further findings would so plainly help to assure the proper disposition of [the] claim," remand for further proceedings is more appropriate. *Butts,* 388 F.3d at 385. Here, evidence of Plaintiff's limitations is not so overwhelming that further proceedings would be pointless. *See Williams v. Apfel,* 204 F.3d 48, 50 (2d Cir. 2000) (holding remand for payment of benefits because record failed to provide "persuasive evidence of total disability that rendered any further proceedings pointless"). Thus, Plaintiff's request that the matter be reversed and remanded for payment of benefits should be denied.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED**, and the Commissioner's determination be **VACATED**, and the matter be

**REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 3, 2015

_____
William B. Mitchell Carter
U.S. Magistrate Judge